```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

THOMAS TENKOTTE,                :
                                :   NO. C 1:05-CV-218
       Plaintiff,               :
                                :   **OPINION AND ORDER**
                                :
   v.                           :
                                :
                                :
CITY OF CINCINNATI,             :
       Defendant.               :
                                :

This matter is before the Court on Plaintiffs, Motion for Summary Judgment (doc. 12), Defendant's Memorandum in opposition (doc. 16) and Plaintiff's Response thereto (doc. 20).

**FACTS**

The following facts are taken from defendant's Motion for Summary Judgement. In those instances where Plaintiff contests Defendant's facts, the Court will so note. Plaintiff, City of Cincinnati, (hereinafter "the City") employed Defendant, Thomas Tenkotte (hereinafter "Tenkotte") as an auto mechanic since 1993 (doc. 12). In 1994, Tenkotte sustained a work-related back injury and suffered re-occurrences in subsequent years (Id.). In 2001, Tenkotte was placed in a light-duty job (Id.). He was later told that the light-duty position was privatized (doc. 12) and that he would need to qualify for mechanic's duties or, Tenkotte asserts, he would be terminated (doc. 16).

As part of the process to qualify for the auto mechanic

position, Tenkotte submitted to a work readiness functional capacity evaluation, which, the City claims, concluded that he was capable of performing full duties as a motorcycle mechanic (doc. 12). However, Tenkotte claims the work readiness functional capacity evaluation indicated he was capable of performing full duties as an auto mechanic with the city (doc. 16). Additionally, Tenkotte claims his treating physician, Dr. Pagani, concluded he was capable of returning to his position as an auto mechanic (doc. 16).

On May 28, 2002, Tenkotte submitted a Request for Reasonable Accommodation Form to the City (doc. 12). This request states that Tenkotte was seeking accommodations for the position of "Motorcycle Mechanic," though there was no such position with the City (Id.). However, Tenkotte asserts that the request sought accommodations for the position of mechanic (doc. 16). The requested accommodations were as follows: flex-time to allow Tenkotte to see his doctor for treatment; a "leadman" to help with heavy lifting; a pneumatic tire-changer to reduce stress; and a handicap space near work to reduce stress on his back from carrying needed items (doc. 12). The flex time was for an undesignated period of time (Id.). Additionally, no "leadman" was available after 4:30 to assist Tenkotte and a pneumatic tire changer would still require lifting in excess of fifty pounds (Id.).

On July 3, 2003, the City denied the Request for

Accommodations and subsequently discharged Tenkotte (doc. 16). Thereafter, Tenkotte filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission(EEOC), alleging a violation of the Americans with Disabilities Act (Id.). On July 11, 2003, the EEOC issued its determination that the evidence obtained during its investigation established that the City had violated the Americans with Disabilities Act (Id.). Efforts to conciliate Tenkotte's charge of discrimination were unsuccessful (Id.).  Tenkotte asserts that his discharge constitutes a violation of the Americans with Disabilities Act of 1990. 42 U.S.C. §§ 12111, et seq.

**APPLICABLE LEGAL STANDARD**

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing

the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the

burden on the moving party or the court to demonstrate that summary judgment is appropriate. Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**ANALYSIS**

The ADA prohibits employment discrimination against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). A "disability" means, with respect to an individual "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Id. § 12102(2). In order to establish a prima facie case of disability discrimination, a plaintiff must show that (1) he is "disabled" as contemplated by the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodations for his disability; and (3) he was discriminated against as a result of this disability. Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2003). Discrimination under the ADA includes failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate the accommodation would impose an undue hardship on the business. 42 U.S.C.A. § 12112(b)(5)(A). A "qualified individual with a disability" is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that

such individual holds or desires." Id. at § 12111(8).

Tenkotte does not contend he has an impairment that substantially limits one or more of the major life activities qualifying as a disability under the first prong of the ADA definition (doc. 16). Tenkotte also does not argue that he would qualify as disabled under the second prong of the definition (Id.). But, Tenkotte does argue that he was regarded as disabled, as defined by the third prong of the ADA definition (Id.).

The City argues that Tenkotte cannot perform the essential functions of an auto mechanic with or without accommodations, and therefore he is not a "qualified individual with a disability" as defined by 42 U.S.C.A. § 12111(8)(Id.) The City maintains that Tenkotte is not a "qualified individual with a disability" because he requested accommodations as a "Motorcycle Mechanic", a non-existent position (doc. 12). The position, rather, is as an auto mechanic that performs services on all types of vehicles (Id.). Tenkotte admits that he worked on all the machinery in the shop (Id.). His treating physician was unaware of Tenkotte's duties beyond that of a motorcycle mechanic when concluding that he was capable of returning to work (Id.). Tenkotte's treating physician stated that heavy lifting and repetitive bending can make his condition worse (doc. 12). The City submits that an auto mechanic must be able to lift over 50 pounds and awkwardly stoop, crawl, and bend to perform the

essential functions of the job; all activities that Plaintiff cannot perform even with the suggested accommodation(Id.). As such, the City argues that Tenkotte is not a "qualified individual with a disability" (Id.)

Additionally, the City states that Tenkotte's physician, when performing the functional capacity evaluation, only suggested that Plaintiff could be a motorcycle mechanic, an accommodation that would create undue hardship (doc. 12). The City asserts that no accommodations are available that would allow Tenkotte to work exclusively on motorcycles because mechanics are required to work on all City vehicles(Id.). Failure to make reasonable accommodations is discrimination, unless such accommodations would impose undue hardship on the business of the employer. 42 U.S.C.A. § 12112(b)(5)(A). The City maintains that any attempt to limit Plaintiff's work to motorcycles would impose undue hardship on the City and therefore is not required by the ADA.(Id.)

In response, Tenkotte argues that his request for reasonable accommodation was not a request to create a "motorcycles-only" position (doc. 16). Tenkotte states that he worked on motorcycles 90% of the time (Id.). As such, he used "motorcycle mechanic" as shorthand for his position (Id.). However, this was not a request for the accommodation to work only on motorcycles (Id.). In fact, when asked to identify accommodations needed on the City's form, Tenkotte did not request

to work exclusively on motorcycles (Id).

The City also argues that Tenkotte failed to engage in the interactive process, as encouraged by the Equal Employment Opportunity Commission, Equal Employment Opportunity Commission v. United Parcel Services, Inc., 249 F.3d 557 (6th Cir. 2001), as he did not accept offers to receive training for other positions with the company (doc. 12). An employer has a duty under the ADA to consider transferring a disabled employee who cannot perform their job with accommodations to a new position for which that person is qualified. Burns v. Coca Cola Enterprises, 222 F.3d 247, 257 (6th Cir. 2000).

In response, Tenkotte argues that he did engage in an interactive process by taking part in a dialogue with the City, submitting to a functional capacity evaluation, and receiving a favorable decision from the City's Equal Employment Opportunity Advisory Review Board (doc. 12). All of these, Tenkotte argues, represent an interaction with the City (Id.). Additionally, Tenkotte argues that completing computer training was not a realistic option due to Plaintiff's work history (Id.). Furthermore, there were no jobs available for which Plaintiff was qualified (Id.).

Finally, the City argues that they never regarded Tenkotte as disabled (doc.12). As such, Tenkotte is not disabled as defined by the ADA (Tenkotte argues only that he is disabled

pursuant to the third definition of disabled). An individual is regarded as having an impairment if: 1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities; or 2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999). When the major life activity under consideration is working, the plaintiff must show, at a minimum, that the employer regarded him as being unable to work in a broad class of jobs. Sutton, 527 U.S. at 491. Additionally, an employee is not regarded as disabled if they are regarded as unable to perform only a particular job. Cotter v. Ajilon Services, Inc., 287 F.3d 593, 599) (internal citations omitted). The City argues that Tenkotte cannot show that the City regarded him as being unable to perform a broad class of jobs (doc. 12). If the City did regard him as unable to work as an auto mechanic because of his impairment, this is only a particular job, and not sufficient to satisfy this prong of the definition (Id.).

  Tenkotte maintains that the City's Superintendent of Fleet Services, James Schwab (hereinafter "Schwab"), regarded him as disabled (Id.). An individual is regarded as having an impairment if: 1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activity; or 2)a covered entity mistakenly believes

-9-

that an actual, non-limiting impairment substantially limits one or more major life activity. Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999). Tenkotte contends that Schwab repeatedly requested that he submit to evaluations by the City's physician (doc. 16). Additionally, Schwab admitted that he did not doubt Tenkotte's back problems (Id.). Tenkotte argues that the City regarded him as disabled by mistakenly believing that he was substantially limited in one or more major life activities (Id.). Tenkotte asserts that he was fired as a result of the City's mistaken belief, despite his ability to perform all the essential functions of the job with reasonable accommodation (Id.). As such, Tenkotte argues he was regarded as disabled and qualified as disabled under the ADA's definition.

> . . . [I]f the plaintiff has direct evidence that the employer relied on his or her disability [including so "regarding" the plaintiff] in making an adverse employment decision . . . 1) The plaintiff bears the burden of establishing that he or she [was regarded as] . . . "disabled." (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and, therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

The procedure by which courts are to consider motions for summary judgement in regarded-as-disabled cases is as follows:

Todd v. City of Cincinnati, 436 F.3d 635 (6th Cir. 2006).

The Court finds that Tenkotte has indeed provided evidence raising a genuine issue of material fact as to whether the City regarded him as disabled (<u>i.e.</u>, Schwab's repeated requests that Tenkotte be examined by City physicians and Schwab's admission that he did not doubt Teknotte's back problems).  Furthermore, genuine issues of material fact are present necessitating a jury's determination of whether Tenkotte was otherwise qualified for the position and whether any proposed accommodation would impose an undue hardship on the City.

**CONCLUSION**

For the reasons indicated herein, the Court DENIES Defendant's Motion for Summary Judgment (doc. 12).


SO ORDERED.


Dated: July 17, 2006           /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge